## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

RUSTY F.,                                    )
                                             )
        Plaintiff,                         )
                                             )
v.                                           )    **Case No. 21-CV-7-CVE-CDL**
                                             )
KILOLO KIJAKAZI,                             )
Commissioner of the                          )
Social Security Administration,              )
                                             )
        Defendant.[1]                      )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation. For the reasons set forth below, the undersigned **recommends** that the decision of the Administrative Law Judge (ALJ) be **affirmed**.

I.      Legal Standards

    A.      **Five-Step Agency Process**

The Social Security Act (Act) provides disability and disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. A claimant who does not have a severe impairment is not disabled. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d), 416.920a(d)(2); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work. If the claimant can perform his past relevant work, he is not disabled. Step four is comprised of three distinct phases.

*See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 416.920(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing Social Security Ruling (SSR) 86-8). If the claimant can perform his past relevant work, he is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

B.    **Standard of Review**

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence

is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Background

### A.      Plaintiff's Allegations[2]

Plaintiff filed for Title II disability benefits on June 14, 2019, alleging disability due to a combination of impairments, including depression; anxiety; agoraphobia; sleep apnea; glaucoma; lower back fracture and back pain; and problems with the hips, knees, and ankles. (R. 86, 208). Plaintiff has an associate's degree in psychology and previously worked as a fast-food worker, customer service representative, and customer service manager. (R. 42, 46, 70-71).

Plaintiff alleges that he became disabled on June 13, 2014, when he was 25 years old. (R. 61, 86). On that date, he quit his job as a customer service manager due to "a build-up of [his] depression and anxiety." (R. 61-62; *see* R. 198). Plaintiff explained that his depression and anxiety "made it difficult to work and attend school at the same time," because his employer refused to give him specific days off to attend class. (R. 209).

---

[2]      The issues in Plaintiff's appeal are limited to his mental impairments; therefore, the summary and discussion herein are focused on those impairments.

According to Plaintiff, he "chose school over work and quit." *Id*. He has not worked since then. (R. 62).

Plaintiff is married, with no children, and his husband works to support Plaintiff and himself. (R. 62). Plaintiff stopped driving in 2018 due to his anxiety. (R. 63-64). His husband usually takes him to doctor's appointments. (R. 64). Plaintiff testified that he suffers from "constant[] . . . suicidal thoughts and ideations." (R. 63). He stated that he "gets down on [himself] and . . . can't muster the energy to do much of anything at all." *Id*. He tries to perform light housework chores, but will stop after a few minutes because he does not feel well. (R. 63-64).

Plaintiff experiences panic or anxiety attacks about once a week. (R. 62). Each episode lasts for a "couple of hours or so," and then Plaintiff needs to isolate himself for two or three days to recover. *Id*. He estimated that he has tried eight to ten different medications for depression and three different medications for anxiety. (R. 65). Plaintiff also experiences insomnia. *Id*.

**B.     Procedural History**

The Commissioner denied Plaintiff's disability claim initially and on reconsideration. (R. 32). Plaintiff requested a hearing with an Administrative Law Judge (ALJ). An ALJ held a hearing via telephone on June 23, 2020, with Plaintiff's consent to proceed via telephone. (R. 57). Plaintiff was represented by counsel, and a vocational expert (VE) testified at the hearing. (R. 53-74). The ALJ denied benefits in a decision dated July 15, 2020. (R. 32-51). In a decision dated December 15, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1-6). As a result, the ALJ's

July 15, 2020 decision became the final decision of the Commissioner. (*See* R. 1). Plaintiff then timely appealed to the district court.

### III.    The ALJ's Decision

#### A.    Step One

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 13, 2014. (R. 35).

#### B.    Step Two

At step two, the ALJ found that Plaintiff has severe impairments of glaucoma and anxiety. *Id*. The ALJ further noted that Plaintiff has a history of obesity, with a body-mass index (BMI) of 43.9. *Id*. Plaintiff's other alleged impairments, including depression; anxiety; sleep apnea; hip, knee, and ankle problems; back pain; and agoraphobia, were found to be non-severe. *See id*.

#### C.    Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the criteria of any Listing, specifically noting Listings under section 2.00 (vision) and 12.00 (mental disorders). (R. 35-36). The ALJ evaluated the "paragraph B" criteria following the required psychiatric review technique (PRT).[3] The ALJ found that Plaintiff has a moderate limitation in each of the four "paragraph B" domains: understanding, remembering, or applying information; interacting with others;

---

[3]    These criteria represent the areas of mental functioning a person uses in a work setting. *See* 20 C.F.R., Part 404, Subpt. P, App'x 1, § 12.00A(2)(b); *see also* 20 C.F.R. § 404.1520a(c)(3), 416.920a(c)(3), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (discussing application of the PRT by the ALJ).

concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 36).

Because Plaintiff does not have at least one extreme or two or more marked limitations, the

paragraph B criteria are not satisfied. *Id*. The ALJ also discussed the "paragraph C" criteria

(for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined

that they are not satisfied. *See id*.

### D.    Step Four

The ALJ determined that Plaintiff has the RFC to perform

> light work as defined in 20 CFR 404.1567(b) except frequent near
> and far vision secondary to low pressure glaucoma, can perform
> simple tasks with routine supervision, can relate to supervisors on a
> superficial work basis, [and] can adapt to a work situation, but
> cannot relate to the general public[.]

*Id*. In explaining the RFC determination, the ALJ discussed Plaintiff's hearing testimony,

Plaintiff's medical records, and medical opinion evidence in the record, as summarized in

part below.

### i.    Treatment Records[4]

Beginning on October 14, 2015, Plaintiff received treatment and medication

management through Harvard Family Physicians. (R. 38-39). Plaintiff reported depression

and suicidal ideation. *See id*. However, he was in no acute distress, had good insight and

judgment, and was oriented to time, place, and person. (R. 39). He was prescribed

medications including Fetzima, Fioricet, Pennsaid, and Qnasl. *See id*.

---

[4]    As noted in the ALJ's decision, the record contains no evidence of treatment dating
from Plaintiff's alleged onset date of June 13, 2014 until October 2015, or in the year 2017.
(R. 38).

In a follow-up appointment on October 30, 2015, Plaintiff reported feeling much better, with less anxiety and improved sleep. *See id*. He denied depression, relationship problems or mood swings, but reported anxiety, sleep disturbances, and poor focus. He was prescribed Silenor for insomnia and Amrix for headache. *Id*.

Plaintiff subsequently tried other medications in lieu of Fetzima for his depression and anxiety, but due to unwanted side effects, he resumed taking Fetzima a few months later. (*See* R. 39-41). Initial dizziness from taking Fetzima subsided. During appointments with different providers in June 2016 and October 2016, Plaintiff showed normal memory and was oriented to time, place, and person. (*See* R. 39-40). On the latter occasion, Plaintiff's mood was depressed, but thought content was appropriate and logical, and Plaintiff denied suicidal or homicidal ideations. (R. 40). Plaintiff reported he was going to community college for an associate's degree in psychology. *See id*. He reported that he smoked (ten packs per year) and had used marijuana and unprescribed Lortab to make himself feel better. *See id*. He was referred for therapy and prescribed with Fetzima and Abilify.

In January 2017, Plaintiff reported an improved mood but was still struggling with fatigue and motivation. (R. 41). He reported fleeting thoughts of suicide but indicated that they were infrequent. He reported sometimes drinking to intoxication, but experienced negative effects when combining alcohol with his medication. He was continuing to attend school online. The following month, Plaintiff reported that he was continuing in therapy, working on getting out of the house more often, denied suicidal ideations and panic attacks, and was considering taking a class in person. *See id*.

Family medicine provider Candy Ting, D.O., treated Plaintiff beginning in June of 2018. During multiple treatment visits between June 13, 2018 and August 5, 2019, Dr. Ting observed normal judgment and thought content, although at times Plaintiff presented with a depressed and/or anxious mood. (*See* R. 41-43). His BMI was noted to be as high as 45.27. (R. 43). Plaintiff indicated that he was continuing in therapy and had tried taking several different medications for his mental health symptoms. *See id*.

Swarna Singhal, Ph.D., began treating Plaintiff for mental health in early May 2019. (*See* R. 43). In a letter dated August 15, 2019, she related Plaintiff's complaints of anxiety and depression, difficulty with planning and going on simple outings to the grocery store, ongoing suicidal thoughts, a previous attempt to cut himself, feelings of guilt, avoidance of public places, and difficulty keeping up with his previous job at Wal-Mart due to physical and mental issues. (R. 43-44). Dr. Singhal described Plaintiff as intelligent and congenial, and noted that he implements suggestions discussed in therapy. (R. 44). She recommended continuous counseling to work on Plaintiff's anxiety and panic disorder, severe depression, and suicidal thoughts. *See id*. She assessed a Global Assessment of Functioning (GAF) score of 30 and diagnosed recurrent major depressive disorder, agoraphobia with panic disorder, unspecified eating disorder, problem related to social environment, inadequate personal hygiene, depression and anxiety, and avoidance of social interaction. *See id*.

### ii.    Medical Opinions

State agency consultant Cynthia Kampschaefer, Psy.D., opined at the initial review level that Plaintiff has the mental RFC for simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public,

and can adapt to a work situation. (R. 45). At reconsideration, Lisa Swisher, Ph.D. concurred with Dr. Kampschaefer's mental RFC assessment. The ALJ found these opinions "persuasive and consistent with the medical evidence of record." *Id*.

Dr. Singhal submitted a medical statement addressed to Plaintiff's attorney, dated November 21, 2019, in which she noted that she had worked with Plaintiff in therapy bimonthly since May of 2019. (R. 44). Dr. Singhal stated that Plaintiff "has been working diligently on his difficulties with depression, anxiety and phobias," resulting in some improvement, "however, his issues are deep rooted and severe and therefore currently he is not capable of any type of employment." (R. 502; *see* R. 44). The ALJ explained that this opinion was "not persuasive or considered[,] as the finding of disability is an issue reserved to the [Commissioner]." *Id*.

### iii.    Past Relevant Work

The ALJ found that Plaintiff has past relevant work as a fast-food worker, telephone customer service representative, and customer service manager. (R. 46). Plaintiff's previous jobs are categorized at exertion levels ranging from sedentary to light, and at Specific Vocational Preparation (SVP) levels ranging from 2 to 8. *See id*. The ALJ found Plaintiff's RFC preludes his past relevant work. *Id*. Accordingly, the ALJ proceeded to step five.

### E.    Step Five

Based on the VE's testimony as to a hypothetical claimant with Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform the requirements of representative occupations, including:

**Baker racker**, light exertion, unskilled, SVP level 1, DOT # 524.687-018, with 59,000 jobs existing in the national economy;

**Agricultural produce sorter**, light exertion, unskilled, SVP level 2, DOT # 529.687-186, with 45,800 jobs nationally; and

**Housekeeper**, light exertion, unskilled, SVP level 2, DOT # 323.687-014, with 414,000 jobs existing in the national economy.

(R. 47). The ALJ concluded at step five that Plaintiff is not disabled. *Id*.

## IV.   Discussion

Plaintiff asserts that the ALJ improperly evaluated the medical opinions, including those of Dr. Singhal and the state agency psychological consultants. Plaintiff also argues that the ALJ failed to properly evaluate Plaintiff's statements regarding the limiting effects of his symptoms. Defendant contends that the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's decision.

### A.   Dr. Singhal's August 15, 2019 letter is not a medical source opinion.

Plaintiff argues Dr. Singhal's August 15, 2019 letter, including the GAF score assessed therein, is a medical opinion, and that the ALJ's decision failed to adequately explain how she weighed it in determining Plaintiff's RFC. Medical opinions are defined as "statement[s] from a medical source about what [the individual] can still do despite [their] impairment(s)" and whether the individual has impairment-related limitations or restrictions in certain work-related functions. 20 C.F.R. § 404.1513(a)(2).

Contrary to Plaintiff's argument, a GAF score is not a medical opinion. *See McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012); *see also Murchison v. Berryhill*, 2018 WL 4407255, at *3 (W.D. Okla. Sept. 17, 2018) (citing *id*. ("The Tenth Circuit has indicated that GAF scores are potentially relevant evidence but are not,

standing alone, medical opinions.")). Rather, GAF scores are generally considered as "[o]ther medical evidence," which includes "judgments about the nature and severity of [an individual's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3).

Neither the GAF score nor Dr. Singhal's August 15, 2019 letter is a medical source opinion. Instead, the letter consists of objective medical evidence and/or other medical evidence, as defined in the applicable regulations. *See id*. § 404.1513(a)(1)-(3). Dr. Singhal described Plaintiff as "an intelligent individual who is congenial and implements suggestions discussed in the therapy sessions," and found that he "requires continuous counseling to work on his anxiety and panic disorder, severe depression and suicidal thoughts due to a feeling of worthlessness." (R. 465; *see* R. 44).

The ALJ's decision addressed these findings in a detailed summary. (*See* R. 43-44). The decision also specifically acknowledged the GAF score of 30, explaining that this rating was "due to suicidal thoughts, inadequate personal hygiene, depression and anxiety, [and] avoidance of social interaction." (R. 466; *see also* R. 44; *supra* Part III.D.i). The ALJ's assessment of this evidence is adequate. Dr. Singhal did not relate the GAF score to Plaintiff's functional abilities or limitations. (*See* R. 465-466). As such, the ALJ was not required to articulate the persuasiveness of this evidence. 20 C.F.R. § 404.1520c(b). The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *e.g.*, *Scull v Apfel*, 221 F.3d 1352, 2000 WL 1028250,

at *1 (10th Cir. 2000) (unpublished) (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

**B.     The ALJ properly considered Dr. Singhal's November 21, 2019 opinion.**

Plaintiff argues that the ALJ was improperly "dismissive" of Dr. Singhal's November 21, 2019 opinion. (Doc. 14 at 12). For claims, such as this one, filed on or after March 27, 2017, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must consider the relevant factors in determining the persuasiveness of a medical source's opinion. *Id*. The most important factors are supportability and consistency. *Id*. § 404.1520c(b)(2).[5] The ALJ must provide good reasons for the weight he ultimately assigns to each opinion. *Watkins*, 350 F.3d at 1300-01 (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be specific enough to make clear to any subsequent reviewers the weight the ALJ assigned to the opinion and the reasons for that weight. (*See id.* at 1300).

Here, the ALJ's decision included a thorough discussion of Dr. Singhal's two-paragraph letter. (*See* R. 43-44; *see also* R. 502). Dr. Singhal opined that Plaintiff

> has tried to work[,] but his severe depression, anxiety, and phobia of open spaces and social settings renders him incapable of having any type of work. He has been working diligently on his difficulties with depression, anxiety and phobias and there have been some improvements, however, his issues are deep rooted and severe and therefore currently he is not capable of any type of employment.

---

[5]     The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

(R. 44).

An ALJ is not required to accept a medical source's opinion; rather, the ALJ need only provide sufficient reasons for rejecting an opinion. *See Mays v. Colvin*, 739 F.3d 569, 574-76 (10th Cir. 2014). Here, the ALJ explained that Dr. Singhal's opinion was not persuasive because "the finding of disability is an issue reserved to the [Commissioner]." (R. 45). Under the applicable regulations, no "special significance" is due to a medical source opinion on issues reserved to the Commissioner, such as opinions "that would direct the determination or decision of disability." *See* 20 C.F.R. § 404.1527(d). No reversible error occurs where, as here, the ALJ has applied the correct legal standards and his conclusions are supported by substantial evidence. *See Lax*, 489 F.3d at 1084.

### C. The state agency psychologists' opinions are substantial evidence, and the ALJ addressed them appropriately.

Plaintiff concedes that the ALJ's mental RFC determination is consistent with the opinions of the state agency psychological consultants, Drs. Kampschaefer and Swisher. However, he argues that these opinions are not substantial evidence supporting the RFC determination, because they failed to discuss certain medical treatment records from Laureate Psychiatric Clinic.

These treatment records span from October 2016 to February of 2017. (R. 347-383). They include treatment notes indicating that Plaintiff reported symptoms consistent with those reported in other records and diagnoses consistent with additional evidence addressed in the ALJ's decision. (*See* R. 350 (Plaintiff reported feeling stress and having trouble making decisions), 352 (Plaintiff reported unwanted side effects from Abilify, and

14

Seroquel was prescribed), 354-355 (Plaintiff reported sleeping well after taking Seroquel; assessment noted hyperarousal and irrational beliefs), 357-359 (Plaintiff reported improved mood but struggle with fatigue and motivation, fleeting thoughts of suicide; "horrendous hangover" when combining alcohol with Seroquel), 361 (Plaintiff discussed mindfulness and relaxation techniques, reported social anxiety), 364 (Plaintiff reported depressed mood, fatigue, sedating effect from Seroquel, anxiety due to his school workload, plans to take class next semester)).

Both Dr. Kampschaefer's and Dr. Swisher's opinions listed treatment records from Laureate Clinic in the Medical Evidence of Record. (R. 89, 104-105). Additionally, the ALJ discussed the same evidence in some detail in explaining the mental RFC determination. (*See* R. 40-41). Most importantly, Plaintiff fails to show that this evidence warranted further discussion by the ALJ or the state agency psychologists. Plaintiff points to nothing in the Laureate Clinic records that would warrant remand. *See Moua v. Colvin,* 541 F. App'x 794, 798 (10th Cir. 2013) ("No principle of administrative law or common sense requires that a case be remanded in quest for a perfect opinion, unless there is reason to believe that the remand might lead to a different result."). To the contrary, the evidence from Laureate Clinic appears largely consistent with other reports of Plaintiff's subjective complaints--as set forth above--and includes substantial evidence supporting the RFC determination.

Next, Plaintiff argues that the ALJ's decision failed to address the required factor of supportability. Under the applicable regulations, the ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical

opinion or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2). The

regulations explain the term "supportability" as follows:

> The more relevant the objective medical evidence and supporting
> explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the
> more persuasive the medical opinions or prior administrative
> medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ's decision summarized Dr. Kampschaefer's PRT and mental RFC

findings, noting that Dr. Kampschaefer "reviewed the medical evidence" in assessing

Plaintiff's mental RFC and the PRT criteria. (R. 45). Similarly, the ALJ noted that Dr.

Swisher "reviewed the medical evidence and concurred" with Dr. Kampschaefer's

findings. *Id.* The ALJ explained that "[t]he initial [PRT] and supplemental mental [RFC]

determination by Dr. Kampschaefer is persuasive and consistent with the medical evidence

of record; likewise, the reconsideration determination by Dr. Swisher is persuasive and

consistent with the additional medical evidence of record." (R. 45).

As such, the ALJ's decision explained her reasons for finding both opinions were

"persuasive," as well as consistent with other medical evidence. *See id*. Although the ALJ's

decision did not use the term "supportability," it articulated the weight accorded to the

opinions of Drs. Kampschaefer and Swisher, and identified relevant medical evidence

supporting their conclusions. Accordingly, the ALJ's discussion of these opinions is

adequate under § 404.1520(c). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th

Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our

review, and can determine that correct legal standards have been applied, merely technical

omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."); *see also Moua,* 541 F. App'x at 798.

**D.     Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements.**

Plaintiff argues that the ALJ failed to properly evaluate the consistency of his statements with the medical evidence of record. In evaluating a claimant's statements regarding pain or other symptoms, the ALJ "must consider (1) whether [a c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted).

> When determining the credibility of pain testimony, the ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1489 (internal citations omitted).[6]

---

[6]     The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory

The ALJ must explain "the link between the evidence and credibility determination." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p.

Here, the ALJ's decision first discussed Plaintiff's hearing testimony. The decision noted that Plaintiff described anxiety and panic attacks, depression, and suicidal thoughts. (R. 37). Plaintiff stated that he has difficulty finishing simple household chores, and that he stopped driving due to anxiety. *Id*. Plaintiff reported that he has trouble falling asleep and waking up, and that his medications cause dizziness and drowsiness. *Id*.

However, the ALJ found that Plaintiff's "description of [his] symptoms and limitations . . . has generally been unpersuasive[,] and [Plaintiff] has not provided convincing details regarding factors that precipitate the allegedly disabling symptoms." (R. 38). The ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 37).

---

policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Comm'r, SSA*, 2021 WL 2794533, *5, n.7 (10th Cir. Jul. 6, 2021).

The ALJ noted that in medical records, testimony, and written statements, Plaintiff described "daily activities that are not limited to the extent one would expect," given his subjective complaints. (R. 38). Specifically, Plaintiff complained that he has difficulty concentrating and can pay attention for "about 5 minutes," but records show that Plaintiff watches television daily, cares for pets, uses Facebook, and plays video games. *Id*. He attends therapy twice a month, although he needs reminders to go. (*Id*.; *see* R. 232-233). The ALJ properly considered Plaintiff's daily activities in evaluating the consistency of subjective statements. *See Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987).

The ALJ also noted inconsistencies in Plaintiff's statements about why he became unable to work. For instance, Plaintiff testified that he stopped working due to his depression and anxiety. (R. 62; *see* R. 37-38). But elsewhere in the record, Plaintiff "reported that his depression and anxiety made it difficult to work and attend school at the same time," and that due to scheduling difficulties, he "chose school over work and quit working on June 13, 2014." (R. 38; *see* R. 209). Accordingly, the ALJ reasonably concluded that Plaintiff "ha[d] not provided convincing details regarding factors that precipitate the allegedly disabling symptoms," further noting "inconsistencies regarding [Plaintiff's] limitations and the objective medical evidence." *Id*.

Plaintiff argues that the ALJ's explanation failed to identify with enough specificity the evidence he found inconsistent with Plaintiff's statements. *See* SSR 16-3p. But the analysis under *Kepler* "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Moreover, "[c]redibility determinations are peculiarly the province of the finder of fact"—that is, the ALJ, not the

court. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Kepler*, 68 F.3d at 391). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls*, 206 F.3d at 1372; *see also* SSR 16-3p, 2016 WL 1237954.

Here, the ALJ cited Plaintiff's own descriptions of his daily activities, as well as inconsistency regarding his alleged need to quit his job in 2014. The ALJ's decision included a detailed discussion of the medical evidence. (*See* R. 38-43). Plaintiff's treating providers observed Plaintiff had an anxious or depressed mood on several occasions. He reported that he was isolating himself and that he experienced disturbed sleep. However, on multiple occasions, Plaintiff reported improvements in his mood after taking medications. (*See*, *e.g.*, R. 39 (in follow-up appointment, Plaintiff "reported feeling much better with less anxiety and he was sleeping better"; subsequently, "[h]is anxiety was definitely better," although "his mood was dark"); R. 40 (Fetzima "worked much better for [Plaintiff] than Wellbutrin"); *see generally* R. 39-41). Additionally, throughout his treatment records, Plaintiff generally was in no acute distress, appeared active and alert, was oriented to time, place, and person, and displayed logical and coherent thought process. (*See* R. 38-44). Plaintiff also reported that he was taking online courses at Tulsa Community College and working toward an associate's degree in psychology. (*See* R. 40, 41, 44).

Although Plaintiff reported increased anxiety and depression at times, he also reported some improvements in his mood with medication and therapy. (*See* R. 43-44). On August 5, 2019, Dr. Ting observed Plaintiff was oriented to person, place, and time; with

normal behavior, judgment, thought content, cognition, and memory. *See id.* On August 15, 2019, Plaintiff reported "extreme anxiety and depression," but Dr. Singhal noted that Plaintiff is "an intelligent individual who is congenial and implements suggestions discussed in therapy sessions," and recommended continued counseling to help him manage his anxiety and panic disorder. (*See* R. 43-44).

The ALJ noted that Plaintiff's symptoms improved with medications and therapy, and that Plaintiff reported ongoing coursework for his associate's degree. (*See* R. 38-44). Thus, the ALJ's decision addressed appropriate factors supporting her assessment that "the evidence as a whole simply does not support the extreme allegations as to functional limitations." (R. 44). As required, the ALJ supported her reasoning with citations to specific evidence in the record. (*See* R. 38-44).

Plaintiff argues that the ALJ failed to address some of his allegations. For instance, Plaintiff stated that he is only "okay" at following written instructions, does not follow spoken instructions well, has trouble concentrating on a conversation, and is afraid to be alone. However, the ALJ specifically noted many of these statements in her analysis. (*See* R. 38). Plaintiff also argues that the record shows he experienced side effects such as sedation from some medications, and that his mental symptoms worsened over time. (Doc. 15 at 14-15). Again, however, the ALJ's decision reflects that she considered all of the relevant evidence. (*See, e.g.*, R. 41).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted

evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Moreover, a claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

As set forth above, the ALJ addressed Plaintiff's subjective statements and provided valid reasons, consistent with the applicable regulations, for finding they are not fully consistent with the medical evidence in the record. The ALJ adequately explained the link between the evidence and her assessment of Plaintiff's subjective statements. *See Kepler*, 68 F.3d at 391. Substantial evidence supports the ALJ's conclusion. Accordingly, Plaintiff has shown no reversible error. *See id.*; *see also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

## V.    Conclusion and Recommendation

The undersigned finds that the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. The undersigned therefore **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **affirmed**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before May 10, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 26th day of April, 2022.

Christine D. Little
United States Magistrate Judge

23