## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RUSTY F.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-0007-CVE-CDL** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt. # 25) of the magistrate judge recommending that the Court affirm the Commissioner's decision to deny plaintiff's claim for disability benefits.  Plaintiff has filed a timely objection to the report and recommendation, and he asks the Court to remand the case for further administrative proceedings.  Plaintiff raises several objections to the report and recommendation, but the primary issues underlying all of plaintiff's objections is whether the administrative law judge (ALJ) reasonably relied on the opinions of the state consultative examiners concerning plaintiff's mental limitations and whether the ALJ made adequate findings explaining his reliance on this evidence.  Dkt. # 26.  Defendant responds that remanding the case due a technical error in the ALJ's findings would serve no purpose, and the ALJ reasonably relied on the findings of the state mental consultative examiners.  Dkt. # 27.

### I.

On June 14, 2019, plaintiff filed an application for disability benefits, and he alleged that he had depression, anxiety, agoraphobia, sleep apnea, a lower back fracture, glaucoma, and hip and knee problems.  Dkt. # 13-3, at 4.  Plaintiff was 30 years old at the time of filing for disability benefits and

25 years old as of the alleged onset of disability on June 13, 2014.  Id. at 4-5.  Plaintiff's claim for disability benefits was denied initially and upon reconsideration, and he requested a hearing before an ALJ.  Id. at 2, 17.  The ALJ held a telephonic hearing and plaintiff was represented by counsel at the hearing.  Plaintiff testified that he has an associate's degree, and he claims that he quit working in June 2014 due to a buildup of depression and anxiety.  Dkt. # 13-2, at 62-63.  Plaintiff stopped driving about two years before the hearing, and he needs someone to drive him to his doctors' appointments.  Id. at 65-66.  Plaintiff testified that he has taken numerous medications for depression and anxiety, but he did not find the medications helpful in relieving his symptoms.  Id. at 66.  Plaintiff stated that he had side effects from anti-depression medication, such as drowsiness and dizziness, and he claimed that weight gain was a side effect of his anti-depressant medication.  Id. at 69.  Plaintiff sought treatment at the Laureate Psychiatric Clinic (Laureate) from October 2016 to February 2017, and he has regularly visited a psychiatrist, Swarna Singhal, Ph. D.  Id. at 67.

The ALJ issued a written decision denying plaintiff's claim for disability benefits.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability.  Id. at 36.  The ALJ determined that plaintiff had the severe impairments of glaucoma and anxiety at step two, but neither of these impairments met one of the listed impairments at step three of the analysis.  Id. at 37.  The ALJ found that plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except frequent near and far vision secondary to low pressure glaucoma, can perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, can adapt to a work situation, but cannot relate to the general public.

Id.  The medical evidence shows that plaintiff started receiving treatment for depression and anxiety in 2015, and he tried various medications to treat these conditions with mixed success.  Id. at 40. Plaintiff received outpatient treatment for depression and anxiety at Laureate in October 2016, and he was diagnosed with major depressive order, moderate anxiety disorder, panic attacks, and opiate and alcohol abuse.  Id. at 41.  Plaintiff received a referral for therapy and he returned to Laureate for additional treatment through February 2017.  Dkt. # 13-7, at 68-102.  The ALJ thoroughly summarized the treatment records from Laureate, and the evidence shows that plaintiff was taking classes at Tulsa Community College during this time.  Id. at 40-42.  In 2018 and 2019, plaintiff continued to seek treatment for depression, anxiety, and certain physical conditions such as sore throat, rashes, and abdominal pain.  Id. at 42-43.  Plaintiff began seeing a psychologist, Swarna Singhal, Ph. D, in May 2019, and Dr. Singhal diagnosed plaintiff with major depressive disorder, agoraphobia, anxiety, eating disorder, and avoidance of social interaction.  Id. at 45.  Dr. Singhal found that plaintiff had a General Assessment of Functioning (GAF) score of 30 due to suicidal thoughts.  Id.  Dr. Singhal also sent a letter to plaintiff's attorney stating that plaintiff was incapable of maintaining any type of employment due to his mental limitations.  Id.

After plaintiff filed for disability benefits, he was referred for consultative examinations as to his physical and mental health.  The initial medical consultative examiner found that plaintiff had vision limitations associated with glaucoma, but the examiner noted few other restrictions on plaintiff's ability to work.  Id. at 46.  A second medical consultative examiner determined that the initial reviewer failed to consider all of plaintiff's impairments, and the second examiner limited plaintiff to light work.  Id.  The mental consultative examiner on the initial review, Cynthia Kampschaefer, Psy. D., determined that plaintiff had the RFC to perform simple tasks with routine

supervision and could adapt to a work situation, but plaintiff would not be able to interact with the general public.  Id.  As to paragraph B criteria, the consultative examiner assessed plaintiff as having moderate limitations in understanding or applying information, interacting with others, concentrating or maintaining pace, and in adapting or managing oneself.  Id.  Another mental consultative examiner, Lisa Swisher, Ph. D, concurred with Dr. Kampschaefer's findings.  Id.  The ALJ rejected the findings of the initial medical consultative examiner, because the examiner failed to consider all of plaintiff's physical impairments.  Id.  However, the ALJ found that the findings of the second medical consultative examiner were consistent with the medical evidence.  Id.  As to the mental consultative examiners, the ALJ found the opinions of both Dr. Kampschaefer and Dr. Swisher persuasive and well-supported by medical evidence.  Id.  The ALJ rejected Dr. Singhal's conclusion that plaintiff was unable to work, because this opinion was considered a finding on the ultimate issue reserved for the Commissioner of Social Security.  Id.

Based on his review of the medical evidence, the ALJ determined at step four of the analysis that plaintiff would be unable to perform any of his past relevant work, and the ALJ proceeded to step five of the analysis.  Id. at 47.  The ALJ determined that there were jobs available in sufficient numbers in the national economy that plaintiff could perform with his RFC, and the ALJ determined that plaintiff was not disabled at step five of the analysis.  Id. at 47-48.  Plaintiff asked the Appeals Council to review the ALJ's denial of his claim for disability benefits, but the Appeals Council found no basis to review the ALJ's decision.  Dkt. # 13-2, at 2.  Plaintiff filed this case seeking judicial review of an adverse decision by the Social Security Administration.  The matter was referred to a magistrate judge for a report and recommendation, and the magistrate recommends that the Court affirm the ALJ's decision to deny plaintiff's claim for disability benefits.  Dkt # 25.

## II.

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. "It is 'more than a scintilla, but less than a preponderance.'" Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Martinez v. Barnhart, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which provides that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule when the plaintiff's objection to the report and recommendation merely asserted a series of errors without

explaining why the magistrate's reasoning was erroneous.  See Zumwalt v. Astrue, 220 F. App'x 770, 777-78 (10th Cir. 2007).[1]

### III.

Plaintiff argues that the ALJ failed to properly evaluate the opinions of the state mental consultative examiners, because the ALJ did not make express findings concerning the supportability and consistency of the examiners' opinions.  Dkt. # 26, at 11-16.  Even if the ALJ's findings were sufficient, plaintiff argues that the mental consultative examiner's opinions are deficient and should not have been considered by the ALJ, because the consultative examiners failed to consider plaintiff's treatment records from Laureate.[2]  Id. at 17-22.  Defendant acknowledges that the ALJ failed to make supportability findings on the record, but this constitutes harmless error in light of the consultative examiner's findings and citations to the medical evidence.  Dkt. # 27, at 2.  Defendant also argues that the opinions of the consultative examiners are not "invalid" due to a failure to discuss Laureate treatment records, because these records are consistent with other medical evidence that was expressly referenced by the consultative examiners.  Id. at 3.

---

[1]   This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[2]   Plaintiff makes a series of arguments critiquing the magistrate judge's report and recommendation, and some of these arguments are not germane to plaintiff's substantive arguments concerning the ALJ's treatment of the opinions of the mental consultative examiners.  This Court is conducting de novo review of plaintiff's challenges to the Commissioner's decision to deny his claim for disability benefits, and it is not necessary for the Court to consider plaintiff's complaints about the magistrate judge's analysis.  Instead, the Court will focus on the substantive issues raised by plaintiff, including such arguments as can reasonably be inferred from his critiques of the report and recommendation.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine whether the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d

7

855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "A decision

is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there

is a mere scintilla of evidence supporting it."  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988).

The Court must meticulously examine the record as a whole and consider any evidence that detracts

from the Commissioner's decision.  Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The primary issue underlying plaintiff's arguments is whether the ALJ could reasonably rely

on the opinions of the mental consultative examiners.  Plaintiff claims that the consultative

examiners' findings were so defective that the ALJ could not have relied on this evidence in

formulating the RFC.  Plaintiff argues that the consultative examiners failed to expressly consider

his treatment records from Laureate, and this failure renders their opinions wholly unreliable.  Dkt.

# 26, at 12.  Defendant responds that treatment records from Laureate are duplicative of other

evidence in the administrative record, and the mental consultative examiners did not need to

specifically discuss this evidence in their written findings.  Dkt. # 27, at 3.

The Court has reviewed the findings of the mental consultative examiners and the medical

evidence in the record, and finds that plaintiff significantly overstates the importance of the records

from Laureate.  These records show that plaintiff received outpatient mental health treatment from

October 2016 to February 2017 at Laureate, and he was diagnosed with depression and anxiety.  Dkt.

# 13-7, at 90.  Plaintiff denied having any suicidal thoughts or intentions, but he did report that he

suffered from panic attacks.  Id.  Plaintiff received a prescription for Abilify.  Id.  Plaintiff's first

follow-up visit took place on December 5, 2016, and he reported having some side-effects from

taking Abilify.  Id. at 71.  No safety concerns were noted for plaintiff and he was counseled on

mindfulness exercises.  Id. at 73.  Plaintiff returned for additional mental health treatment in January

and February 2017, and he continued to report having problems with his medication.  Id. at 85.

Treatment notes show that plaintiff's anxiety was generally improving until February 2017, when

his spouse quit his job.  Id. at 87.  Plaintiff stated that he would return for a follow-up visit in two

weeks if he still had insurance, but there are no further treatment records from Laureate after

February 8, 2017.  Id.

These treatment records were included in the medical evidence provided to the mental

consultative examiners, and both Dr. Kampschaefer and Dr. Swisher listed Laureate treatment

records as part of the evidence they had received for their review.  Dkt. # 13-3, at 7, 22.  Dr.

Kampschaefer noted that plaintiff had been treated for severe anxiety and depression, including a

past history of suicidal ideations, and she determined that plaintiff had the medically determinable

impairments of anxiety, and depression.  Dkt. # 13-3, at 9.  Dr. Kampschaefer assessed plaintiff with

a moderate limitation as to global functioning after a summary of certain treatment records, but

found that plaintiff's subjective complaints as to the severity of his symptoms were not consistent

with the objective medical evidence.  Id. at 10-11.  A second consultative examiner, Dr Swisher,

considered any new treatment records since the date of Dr. Kampschaefer's initial review of the

evidence, and noted that plaintiff was continuing to receive treatment for depression and anxiety.

Id. at 26.  However, plaintiff's speech, behavior, and judgment were within normal limits and

plaintiff was not reporting any suicidal thoughts.  Id.  Both consultative examiners were clearly

aware of plaintiff's complaints concerning the severity of his anxiety and depression and the extent

of his treatment for these conditions, and the failure to specifically reference the treatment records

from Laureate does not detract from the validity of their findings.  The records from Laureate were

consistent with other evidence in the administrative record, and the Court does not find that the

failure to specifically discuss these records renders the mental consultative examiners' assessments invalid or insubstantial.[3]

Plaintiff next argues that the ALJ failed to make sufficient findings explaining the amount of weight he gave to the findings of the mental consultative examiners. Dkt. # 26, at 9-11. Social Security regulations do not require an ALJ to "defer or give any specific evidentiary weight" to medical opinions or prior administrative medical findings but, instead, the ALJ must consider the following factors to assess the weight to be given to a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). The factors to be given the most weight in the ALJ's analysis are the supportability of the medical opinion with reference to objective medical evidence and the consistency of the medical opinion with other medical evidence in the record. 20 C.F.R. § 416.920c(b)(2). The ALJ must discuss these two factors in his written decision, but the other factors do not need to expressly considered. Id.

Plaintiff asserts that the ALJ failed to make sufficient "supportability" findings concerning the opinions of the mental consultative examiners, because the ALJ failed to identify specific medical evidence in the administrative record that supported the conclusions of the consultative examiners. Dkt. # 26, at 9. Social Security regulations provide that supportability and consistency are the most important factors for the ALJ to consider when evaluating medical opinion evidence.

---

[3]  Plaintiff makes a separate argument that the magistrate judge erroneously attempted to "cure" the defective consultative examiner opinions by supplying additional findings. Dkt. # 26, at 13-14. The Court has determined that findings of the consultative examiners are valid and constitute substantial evidence, and the Court does not need to consider plaintiff's argument concerning the magistrate judge's alleged effort to "cure" the defective findings of the consultative examiners.

As to "supportability," the regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The "consistency" factor requires the ALJ to consider whether the medical opinion or prior administrative finding is consistent with other evidence in the administrative record. 20 C.F.R. § 404.1520(c)(2).

Plaintiff is correct that the ALJ did not expressly use the words "supportability" and "consistency" when reviewing the opinions of the mental consultative examiners, but this does not mean that the ALJ's findings are automatically defective or insufficient. The ALJ thoroughly summarized the medical evidence in the administrative record and accurately explained the findings of Dr. Kampschaefer and Dr. Swisher. The ALJ explained that Dr. Kampschaefer's initial psychiatric review technique "was persuasive and consistent with the medical evidence of record," and "the reconsideration determination by Dr. Swisher is persuasive and consistent with the additional medical evidence of record." Dkt. # 13-2, at 46. Defendant acknowledges that the ALJ did not expressly make supportability findings, but she argues that remand would serve no useful purpose when the findings of Dr. Kampschaefer and Dr. Swisher are well supported by the medical evidence. Dkt. # 19, at 5; Dkt. # 27, at 2.

The ALJ's findings as to the supportability and consistency were not extensive, but the ALJ clearly set forth the medical evidence supporting Dr. Kampschaefer's and Dr. Swisher's opinions concerning plaintiff's mental functional limitations and the ALJ's reasoning is clear. The mental consultative examiners found that plaintiff had functional limitations associated with his ability to

11

perform work-related tasks and associate with other person in the workplace, and the ALJ found that these limitations were consistent with the medical evidence. However, the mental consultative examiners determined that plaintiff's subjective complaints about his functional limitations were only partially consistent with the objective medical evidence. Dkt. # 13-3, at 10-11. The ALJ reached the same conclusion after independently reviewing the medical evidence, and these findings are stated in the ALJ's written decision. Dkt. # 13-2, at 45-46. It would have been preferable for the ALJ to make more extensive supportability and consistency findings when discussing the findings of the mental consultative examiners, but the ALJ's written decision adequately explains the ALJ's reasoning for accepting the opinions of the mental consultative examiners. See Keyes-Zachary v. Astrue, 695 F.3d 1145 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal"). The ALJ's written decision shows that he would have rejected the opinions of the mental consultative examiners if he found them defective, as the ALJ rejected the opinions of the initial medical consultative examiner due to a failure to consider all of plaintiff's physical impairments. Dkt. # 13-2, at 46. Instead, the ALJ thoroughly reviewed the medical evidence and found that the opinions of the mental consultative examiners were persuasive, and this finding was supported by substantial evidence. The Court finds no basis to remand the case for further administrative proceedings based on the ALJ's treatment of the opinions of the mental consultative examiners, and the Commissioner's decision is affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 25) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **affirmed**.  A separate judgment is entered herewith.

**DATED** this 26th day of September, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE